# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# CHATTANOOGA

UNITED STATES OF AMERICA )
)
v. ) 1:08-CR- 64
) Judge Collier/Lee
GREGORY J. WILLIAMS )

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Gregory J. Williams, and the defendant's attorney, Gary Gerbitz, have agreed upon the following:

1. The defendant will waive indictment and arraignment and plead guilty to an Information charging the defendant with the following offense(s):

   a) Count One: willfully making and subscribing written declarations under the penalties of perjury which he did not believe to be true and correct, in violation of 26 U.S.C. § 7206(1).

   The punishment for this offense is as follows. Imprisonment for not more than three years, one year of supervised release, a fine of $100,000, assessment fee of $100, and total restitution in the amount of approximately $158,665.00 (tax due plus interest, 2000 through 2005 tax years).

2. The parties agree that the appropriate disposition of this case would be the following as to each count:

   a) The Court may impose any lawful term of imprisonment up to the statutory maximum;

  b) The Court may impose any lawful fine up to the statutory maximum;

  c) The Court may impose any lawful term of supervised release up to the statutory maximum;

  d) The Court will impose a special assessment fee as required by law; and

  e) The Court may order forfeiture as applicable and restitution as appropriate.

 3. The defendant has read the information, discussed the charges and possible defenses with defense counsel, and understands the crime charged. The defendant is pleading guilty because the defendant is in fact guilty. In order to be guilty, the defendant agrees that each of the following elements of the crime must be proved beyond a reasonable doubt:

  a) The defendant made, or caused to be made, and signed an income tax return for the year in question that was false as to a material matter.

  b) The return contained a written declaration that it was made under the penalties of perjury.

  c) The defendant did not believe the return to be true and correct as to the material matter(s) charged in the information; and

  d) The defendant made, or caused to be made, and signed the return willfully.

 4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other

2

facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

## FACTUAL BASIS

Gregory Williams willfully filed false tax returns, under the penalties of perjury, for the years 2002, 2003, 2004 and 2005 that he knew were not materially true and correct. Williams filed tax returns for the aforementioned years and attached altered Form 1099s by erasing the amount on the Form 1099 and entering $0.00. Williams typed a statement on each of the altered Forms 1099, signed under the penalties of perjury, stating that they were incorrect. Williams knew that the Form 1099s he received reflecting income from medical and health payments were correct.

Mr. Williams has been a clinical psychologist for more than fourteen years and had in the past timely filed tax returns. During 1998-1999, Williams' aunt, who resided with Williams during his adolescent years, began talking to Williams about the alleged fallacies of the federal tax system. She provided reading material and DVDs of Certified Public Accountants and ex-IRS agents in which anti-tax views were discussed. She also brought individuals to Williams' residence to discuss anti-tax issues. Global Prosperity was the first organization Williams was introduced to by his aunt. Global Prosperities' CDs referred Williams to Haggerty Trading System (HTS). HTS tells members that the IRS Form 1040 instructions state that individuals are supposed to file a return, list, or statement. Based on this, Williams became a non-filer and began filing a financing statement that was sent to the Office of Chief Counsel, Department of Treasury/IRS, Washington, DC. Williams took the position that he was still in compliance by following the Form 1040 instructions by filing a statement.

3

The literature and CDs provided by HTS advocates not advising your tax preparer, banker, and others about your anti-tax views because they will question your sanity. During this time, Williams continued to send information to his Certified Public Accountant to prepare his 2000-2003 tax returns which were prepared but which Williams never filed. Williams never discussed his anti-tax sentiments with his tax preparer or banker when obtaining loans.

Williams' relationship with HTS lasted until approximately sometime in 2003. After HTS, Williams became involved with Eddie Kahn who founded the Guiding Light of God Ministries (GLGM). GLGM disagreed with HTS's philosophy of filing tax statements. GLGM offered a "Full Service Facility" and with a power of attorney would handle any correspondence with the IRS. Within weeks of Williams joining GLGM, the Department of Justice raided GLGM and took their records. Kahn later moved to the country of Panama.

During September 2002, Williams was notified by the IRS that the IRS has not received his tax returns for the years 2000 and 2001. Williams responded by sending the IRS a 39-page affidavit stating he was not required to file tax returns. During April 2004, IRS sent a notice of deficiency to Williams for the 2000 and 2001 tax years reflecting increases in taxes of $58,364 and $54,015, respectively. Williams responded with anti-tax letters.

During the fall of 2003, Williams visited a Collegedale, Tennessee, resident who was previously convicted of tax charges. This individual advised Williams that Williams is beyond any help and that Williams could not change the path he chose. This individual provided Williams with a tax protestor type magazine to read. Williams responded to an ad in the magazine by the Western Patriot Network (WPN) The WPN referred Williams to Robert Clarkson, who advised the Patriot

4

Network has meetings in Knoxville and Atlanta. During November/December 2003, Williams attended a Patriot meeting in Knoxville, Tennessee, hosted by Clarkson. Clarkson told Williams that the filing of the financing statements caused Williams' IRS problems. The Patriot Network advocated not filing any documents with the IRS. The Patriot Network also advocated the paperless banking system. Williams was instructed not to use banks and to endorse income checks and use them to pay personal expenditures. During January/February 2004, Clarkson convinced Williams to form a Chattanooga, Tennessee, chapter for the Patriot Network.

During 2004, Williams obtained a book titled, "Cracking the Code," written by Pete Hendrickson. This book states that income only includes interest and income from selling alcohol, tobacco, firearms or wages earned by a government employee. Based on Williams' reading of this book, Williams prepared returns and attached his Form 1099s, but removed the income amount and included a statement that they were incorrect. Williams filed returns with altered Form 1099s for the years 2000-2005. On or about April 15, 2005, Williams knowingly and wilfully filed a Form 1040 Individual Income Tax Return for 2004 reporting $18.05 as his income, when he well knew that his income was approximately $150,448.

On November 8, 2004, the IRS began an investigation of Williams' 2002 tax return, Form 1040. The Revenue Agent's examination revealed that Williams had not filed a tax return for the years 2002 and 2003. The examination also revealed the Williams filed a document purporting to be a tax return with attached Form 1099s in which the income amount was changed to zero. During February 2005, Clarkson and other individuals accompanied Williams to the Chattanooga,

Tennessee, IRS office for a scheduled appointment with a Revenue Agent regarding the non-filing of Williams' 2002 and 203 tax returns. A cassette tape found during a search warrant at Williams' residence contained a recording of that day's events. Clarkson could be heard on the tape advising Williams not to cooperate.

Investigation revealed that Williams is a self-employed clinical psychologist and receives income from patient's insurance companies, patients, and corporate clients. Williams utilized the services of Receivables Management, Inc. (RMI) to bill and collect insurance payments for his clients. The insurance checks were mailed to RMI's post office box. After posting to the client's ledger account, RMI would deposit the checks to Williams' bank account. Income payments received by patients and corporate clients were deposited by Williams to his bank account. During early 2004, Williams instructed RMI to mail him the insurance checks in which Williams deposited to his bank account. The investigation revealed that a substantial amount of income checks were not deposited by Williams but endorsed and used to pay personal expenditures.

On February 21, 2007, a federal search warrant was executed at Williams' residence and place of business. Numerous documents were seized regarding Global Prosperity, HTS, GLGM, and the Patriot Network. Several notepads were seized that contained notes by Williams regarding meetings and telephone calls regarding the anti-tax movement. These notes also contained comments by Williams about his course of action in not filing returns.

The bank deposits method was used to verify the gross receipts on Williams' 2003-2005 tax returns Williams filed with the Revenue Agent. This method was used because Williams deposited the majority of his income and there were no books and records. Under this method,

6

checks to cash are subtracted from deposits to eliminate the possibility of cash withdrawals being deposited. Williams reviewed the computation of income using the bank deposits method and initialed all non-income deposits. All cash deposits were cash payments received from patients. Williams' CPA used the 2004 and 2005 computation of gross receipts in the preparation of Williams' tax returns.

This investigation revealed that during January 2007, Williams and his wife met with Joe Weaver, CPA, to have Weaver prepare Williams' wife's tax return for 2006. Williams told Weaver that Williams was not filing tax returns and explained his philosophical beliefs about the tax system. Weaver advised Williams that his decision not to file was not a good idea and encouraged Williams to file returns. On February 28, 2007, Williams met with Weaver again to obtain his wife's 2006 tax return. During this meeting, Weaver and Williams prayed about Williams' tax situation. Weaver said after the meeting it was his opinion that Williams had a "wake-up call" after the search warrant and believed that his may have changed Williams' thinking about not filing tax returns.

On May 17, 2007, Williams contacted Weaver about obtaining his assistance in preparing Williams' 2000-2006 tax returns. Weaver was advised by IRS that completed tax returns for the 2000-2003 returns had already been prepared by a CPA but never filed. Weaver was provided with spreadsheets of income for 2004 and 2005 for Williams to review and indicate what items were not income. During this process, Williams made unsolicited statements against his interest. Williams obtained the services of an attorney who contacted the U.S. Attorney's office and advised that Williams would like to resolve this matter through an expedited plea agreement.

7

Williams has filed corrected returns for the years 2000-2005. Williams has filed a joint 2006 tax return and paid the tax. Williams has launched a website, www.taxfool.net, to publicize the error of his ways with regard to his involvement in the tax protest movement.

5. The defendant understands that by pleading guilty the defendant is giving up several rights, including:

   a) the right to be indicted by a grand jury for these crimes;

   b) the right to plead not guilty;

   c) the right to a speedy and public trial by jury;

   d) the right to assistance of counsel at trial;

   e) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

   f) the right to confront and cross-examine witnesses against the defendant;

   g) the right to testify on one's own behalf, to present evidence in opposition to the charges and to compel the attendance of witnesses; and

   h) the right not to testify and to have that choice not used against the defendant.

6. The defendant further agrees to cooperate completely and truthfully with any and all law enforcement agents and personnel of the United States Attorney's Office. This cooperation includes, but is not limited to, meeting with and being interviewed by such law enforcement agents or personnel of the United States Attorney's Office whenever requested. The defendant further agrees not to protect anyone who was truly involved and not to falsely implicate anyone who was not truly involved in the commission of criminal offenses. The defendant further agrees to testify

completely and truthfully before a federal grand jury, at any trial, or at any other proceeding if called upon by the United States to do so. Upon request by the United States, the defendant must furnish all documents, objects and other evidence in the defendant's possession, custody or control that are relevant to the United State's inquiries. The defendant and defense counsel also knowingly, voluntarily, and intentionally waive the defendant's right to have defense counsel present during the course of cooperation, including questioning or court appearances.

7. To ensure the defendant's truthful cooperation, the United States agrees, except as provided below, not to use any self-incriminating information provided by the defendant pursuant to this written plea agreement against the defendant. However, nothing in this plea agreement shall be applied to restrict the use of any information, (1) known to the United States prior to entering into this written plea agreement; (2) obtained from any other source; or (3) concerning the defendant's prior criminal record. Should any of the following occur (1) the defendant provides false or materially misleading information during the course of the defendant's cooperation; (2) the defendant later moves to withdraw the defendant's guilty plea or (3) the defendant breaches any of the terms of this plea agreement, then the United States may make use of any information provided by the defendant for any purpose in any subsequent proceeding, including grand jury, trial and sentencing phases of this case or in any other prosecutions or proceedings against the defendant.

8. At the time of sentencing, the United States may bring to the Court's attention the nature, extent, and value of the defendant's cooperation so that it may be considered in determining a fair and appropriate sentence under the facts of the case. If, in the sole discretion of the United States, the defendant provides substantial assistance, the United States may file a motion

9

for downward departure pursuant to Section 5K1.1 of the Sentencing Guidelines or 18 U.S.C. § 3553(e), or both, allowing the Court to impose a sentence which may fall below the minimum mandatory term of imprisonment or below the Sentencing Guidelines, but the United States will be under no obligation to do so. The United States retains complete discretion whether to file such a motion. If such a motion is filed, the defendant understands that the Court, not the United States, determines whether the defendant receives a downward departure or a sentence below a minimum mandatory term of imprisonment.

9. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, the United States agrees to move, at or before the time of sentencing, that the Court decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make statements that are inconsistent with accepting responsibility for the defendant's offense, including violations of conditions of release or the commission of additional offenses prior to sentencing, the United States will be free not to make such motion or to withdraw such motion if already made, and will be free to recommend to the Court that the defendant not receive any offense level reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

10. The defendant agrees to pay the special assessment in this case prior to sentencing.

11. No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding the potential sentence in this case are not binding on the Court. The defendant understands that the sentence in this case will be determined by the Court after it receives the pre-sentence report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

12. The defendant agrees to pay any fine and/or restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect the fine and/or restitution obligation by set-off of program payments, execution on non-exempt property, and any other means the United States deems appropriate. Finally, the defendant and counsel agree that the defendant may be contacted regarding the collection of any fine and/or restitution without notifying counsel and outside the presence of counsel.

13. <u>Restitution</u>

A. Defendant agrees to pay restitution to the Internal Revenue Service in the total amount of $158,665.00.

B. Defendant agrees that the total amount of restitution reflected in this agreement results from defendant's fraudulent conduct.

C. The total amount of restitution consists of the following:

| Tax Year(s) | Tax Due | Interest Under the Internal Revenue Code Due Through 08/01/2008 |
| --- | --- | --- |
| 2000 | $ 25,777 | $14,935 |
| 2001 | 23,116 | 10,953 |
| 2002 | 23,299 | 9,105 |
| 2003 | 19,724 | 6,521 |
| 2004 | 10,177 | 2,733 |
| 2005 | 10,432 | 1,963 |
|  | $112,455 | $46,210 |

*This interest figure has been calculated by the IRS, under 26 U.S.C. 6601 and/or 6621, as of the anticipated date of sentencing. This interest figure does not include any interest that may accrue under 18 U.S.C. 3612.

D. Defendant agrees that he will sign any IRS forms deemed necessary by the IRS to enable the IRS to make an immediate assessment of that portion of the tax and interest that he agrees to pay as restitution ($158,665.00). Defendant also agrees to sign IRS Form 8821, "Tax Information Authorization."

E. Defendant agrees not to file any claim for refund of taxes or interest represented by any amount of restitution paid pursuant to this agreement.

F. Defendant agrees that he is liable for the fraud penalty under 26 U.S.C. 6663 or 6651(f) on the amount to be credited to tax set forth in paragraph C. Defendant agrees to the immediate assessment of the fraud penalty on the amount to be credited to tax set forth in paragraph C and agrees that, in order to enable the IRS to make an immediate assessment of the fraud penalty,

12

the IRS form he agreed to sign in paragraph E will include the appropriate amount of the fraud penalty. Defendant agrees not to challenge or dispute any fraud penalties on the amount to be credited to tax set forth in paragraph C.

G. The parties understand that defendant will receive proper credit, consistent with paragraph C above, for the payments made pursuant to this agreement. Except as set forth in the previous sentence, nothing in this agreement shall limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties or interest due from the defendant for the time period(s) covered by this agreement or any other time period.

H. Defendant agrees that this agreement, or any judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise the defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS for the time period(s) covered by this agreement or any other time period.

I. Defendant agrees that, unless the Director of the Administration Office of the United States Courts directs him otherwise, all payments made pursuant to the court's restitution order are to be sent only to the Clerk of the Court at the following address:

> U. S. District Court Clerk
> 900 Georgia Avenue, Room 309
> Chattanooga, Tennessee 37402

J. With each payment to the Clerk of the Court made pursuant to the District Court's restitution order, defendant will provide the following information:

1. Defendant's name and social Security number;
2. The District Court docket number assigned to this case;
3. Tax year(s) or period(s) for which restitution has been ordered; and
4. A statement that the payment is being submitted pursuant to the District Court's restitution order.

13

K. Defendant also agrees to send a notice of any payments made pursuant to this agreement, including the information listed in the previous paragraph, to the IRS at the following address:

> Internal Revenue Service
> Attn: MPU, STOP 151 (Restitution)
> P.O. Box 47-421
> Doraville, GA 30362

L. Defendant understands that he is not entitled to credit with the IRS for any payment sent to an incorrect address or accompanied by incomplete or inaccurate information, unless and until any payment is actually received by the Internal Revenue Service and identified by it as pertaining to his particular liability.

14. (a) In consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant agrees not to file a direct appeal of the defendant's conviction(s) or sentence except the defendant retains the right to appeal a sentence imposed above the sentencing guideline range as determined by the district court.

(b) In addition, the defendant knowingly and voluntarily waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack the defendant's conviction(s) and/or resulting sentence. The parties agree that the defendant retains the right to raise, by way of collateral review under § 2255, claims of ineffective assistance of counsel or prosecutorial misconduct not known to the defendant by the time of the entry of judgment.

15. This agreement becomes effective once it is signed by the parties. If the United States violates the terms of this agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this agreement, moves to withdraw the defendant's

guilty plea(s), or violates any court order or any local, state or federal law pending the resolution of this case, then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or statutory speedy trial defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

16. This plea agreement constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

James R. Dedrick
United States Attorney

_5/21/08_
Date

By: _John P. MacCoon_
John P. MacCoon
Assistant United States Attorney

_May 14, 2008_
Date

_Gregory J. Williams_
Gregory J. Williams
Defendant

_5/17/08_
Date

_Gary Gerbitz_
Gary Gerbitz
Attorney for Defendant